910 P.2d 744

**Richard L. BROOKS, Plaintiff–Respondent–Cross Appellant,**

**v.**

**GIGRAY RANCHES, INC., an Idaho Corporation, Defendant–Appellant–Cross Respondent.**

No. 20923.

Supreme Court of Idaho, Boise, March 1995 Term.

Jan. 29, 1996.

Gigray, Miller, Downen & Wilper, Caldwell, for appellant. Donald Downen argued.

Richard B. Eismann, Nampa, for respondent.

SCHROEDER, Justice.

Richard L. Brooks (Brooks) sued Gigray Ranches for breach of an agistment contract. Gigray Ranches, Inc. (Gigray Ranches) answered and counterclaimed on a theory of conversion. The jury returned a special verdict in favor of Gigray Ranches on Brooks' complaint for breach of contract. The jury also returned a verdict in favor of Gigray Ranches on the claim of conversion but awarded a lower amount of damages to Gigray Ranches than it claimed. Gigray Ranches moved for judgment notwithstanding the verdict or new trial. The district court denied the motion, and Gigray Ranches appeals the denial. Gigray Ranches also appeals the district court's ruling authorizing Brooks to cash the checks that had been the subject of its counterclaim and the ruling of the district court denying Gigray Ranches' request for attorney fees.

Brooks cross-appeals, arguing that if the Court rules in favor of Gigray Ranches on the conversion claim, then the entire action must be remanded for a second trial on all claims. Brooks also argues that an evidentiary ruling of the district court should be reversed if a new trial is ordered. Brooks additionally cross-appeals the district court's ruling granting Gigray Ranches costs.

Both parties seek attorney fees on appeal.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

In 1981 Brooks was an employee of Gigray Ranches and had a herd of cattle and calves in place at the Gigray ranch. Brooks contracted in writing with Gigray Ranches for the care of the cows and calves. The 1981 contract was supplanted on March 9, 1982, by a second written contract. This was the last written contract between the parties who then operated on a verbal agreement for the several years culminating in the present dispute.

By the terms of the 1982 agreement Gigray Ranches agreed to provide pasture and feed at its ranch "near Marsing, Idaho" for Brooks' "115 pairs of cows and calves and 3 bulls." In exchange for providing "pasture and feed from January 1, 1982 to January 1, 1983, unless sooner removed or sold as provided [in the contract]," Gigray Ranches was to receive 60% of the calves raised. Payment was to be made by division of the animals at weaning time. The contract did not contain a clause providing for its renewal.

The parties followed the arrangement set forth in the 1982 contract through the end of 1988. When it came time to wean the calves in June of 1989, Brooks bought Gigray Ranches' 60% interest in that year's calves for a future sale that he planned. Gigray Ranches agreed that Brooks could keep the bull calves on Gigray Ranches' ranch so long as Brooks provided for their feed and care.

In late 1989 Brooks held a sale of his bull calves and other cattle. He also sold ten pair of cows with calves, in which Gigray Ranches still owned a 60% interest in the calves. However, Brooks kept Gigray Ranches' portion of the sale proceeds and never told Gigray Ranches of the sale.

Gigray Ranches told Brooks of a possible sale of the ranch on February 15, 1990. The sale was completed on March 30, 1990, and Gigray Ranches notified Brooks that the new owner would be taking possession of the ranch on May 1, 1990. Further, Brooks' employment would be terminated on April 15, 1990.

Brooks and William Gigray, the president of Gigray Ranches, discussed the care of Brooks' cattle for the remainder of 1990. Brooks maintained that Gigray Ranches was obligated to care for the cattle through January 1, 1991. Gigray disagreed. However, he made arrangements for the cattle to be kept on a ranch approximately ninety miles away, near Westphal, Oregon. The owner of the Westphal ranch offered to take the cattle for

either $15 per cow per month, with Gigray Ranches retaining its rights under the agistment contract, or at no charge as assignee of Gigray Ranches' 60% interest in the calf crop. Brooks decided not to move his cattle to that location.

Brooks moved the cattle from the Gigray Ranches' property in May and split up the herd in order to pasture them in several different places. Brooks held three calf sales in the summer and fall of 1990 and did not provide any of the proceeds to Gigray Ranches. Sixty percent of the proceeds of the three sales would have been $22,188.88, $4,644.00, and $1,816.39, respectively.

Brooks brought an action against Gigray Ranches for breach of the agistment contract, seeking damages of $9,813.23, calculating the difference between the costs he incurred as a result of Gigray Ranches' alleged breach and the offsetting credits he would acknowledge if the contract were still in effect. Gigray Ranches counterclaimed against Brooks for conversion, seeking damages for 60% of the calf sale proceeds. The jury returned a special verdict on Brooks' contract claim, finding that Gigray Ranches did not breach its contract with Brooks. The jury returned a verdict in favor of Gigray Ranches on the conversion claim but only assessed damages in the amount of $900. The district court denied Gigray Ranches' motion for judgment notwithstanding the verdict or in the alternative for a new trial. The district court granted Brooks' motion to amend the judgment and clarify his interest in two checks representing the proceeds from the sale of calves in August of 1990. The district court granted Gigray Ranches' costs in the amount of $745.00 but denied Gigray Ranches' request for attorney fees.

## II.

## THE DISTRICT COURT DID NOT ERR IN DENYING GIGRAY RANCHES' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

■ In reviewing a motion for judgment n.o.v this court "applies the same standard as does the trial court which passed on the motion originally." *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). Reviewing the evidence in the light most favorable to the non-moving party with the benefit of all resulting legitimate inferences, the jury's verdict will only be set aside if as a matter of law it cannot be said that "there is substantial evidence upon which the jury could properly find a verdict for that party." *Id.* at 763, 727 P.2d at 1191.

The jury found that Gigray Ranches did not breach its contract with Brooks. Gigray Ranches maintains that Brooks admitted that he owed $33,713.47 in offsets, and if Gigray Ranches did not breach the contract it must be entitled to judgment in that amount, citing *Chisholm v. J.R. Simplot Co.*, 94 Idaho 628, 495 P.2d 1113 (1972).

■ The record does not support Gigray Ranches' logic. The reply to the counterclaim asserted the defense of failure to state a claim upon which relief could be granted. While the reply admitted a contract had been entered into in 1982, the reply did not admit existence of a contract on the date of the conversions alleged by Gigray Ranches. The jury was instructed on the elements of a valid contract and was instructed that a contract could be amended, modified or discharged by an oral or written agreement. It is not explicit from the special verdict, but the jury's determination is consistent with a determination that no contract existed at the time of the calf sales in the summer and fall of 1990. Further, it is clear that Brooks did not admit owing Gigray Ranches $33,713.47. That evidence was offered by Brooks as a reduction from any award he would obtain if the jury determined that Gigray Ranches breached an existing contract. Brooks did not admit any amount being due Gigray Ranches.

The jury's verdict was consistent with either the theory that there was no agistment contract in 1990, or, that if a contract existed for 1990, it was terminated prior to the 1990 calf sales. The trial court properly denied the motion for judgment notwithstanding the verdict.

## III.

## THE TRIAL COURT PROPERLY DENIED THE MOTION FOR NEW TRIAL

■ A trial court's ruling on a motion for new trial will not be reversed unless the

lower court abused its discretion. *Burggraf v. Chaffin*, 121 Idaho 171, 173, 823 P.2d 775, 777 (1991). That determination will be made by applying the three-part inquiry of *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 803 P.2d 993 (1991),[1] to the district court's two-part analysis of the motion for new trial. In ruling on a motion for a new trial, the court must ask "whether the verdict was against the weight of the evidence and if the ends of justice would be served by vacating the verdict" and "whether a different result would follow in a retrial." *Burggraf*, 121 Idaho at 174, 823 P.2d at 778 (quoting *Robertson v. Richards*, 115 Idaho 628, 631–32, 769 P.2d 505, 508–09 (1987)).

■ The district court did not abuse its discretion under the *Sun Valley* standard. The district court stated that it was faced with a discretionary decision and indicated it had done the weighing and felt the verdict was fair based on the evidence, concluding that a second jury would not rule differently. This constitutes a sufficient articulation of the court's discretionary ruling applying the controlling standard. There is sufficient evidence in the record such that the ruling amounts to an "exercise of reason." *Sun Valley Shopping Ctr.*, 119 Idaho at 94, 803 P.2d at 1000.

## IV.

## THE DISTRICT COURT DID NOT ERR IN REFUSING TO GIVE GIGRAY RANCHES' TENDERED JURY INSTRUCTIONS

■ The Court's standard of review of the adequacy of jury instructions is well-established:

The standard of review when reviewing jury instructions on appeal requires us to determine whether the jury was properly and adequately instructed. Accordingly, we must review the instructions and ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues and state the applicable law.

*Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 50, 830 P.2d 1185, 1188 (1992).

Gigray Ranches argues that the district court erred by refusing Gigray Ranches' tendered instruction number 5 and amended instruction number 6 on the conversion claim.[2] Instead, the court submitted instructions number 4, 19, and 19A on the conversion claim.[3]

■ The only significant distinction between the instructions Gigray Ranches of-

---

1. "(1) whether the [decision maker] correctly perceived the issue as one of discretion; (2) whether the [decision maker] acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the [decision maker] reached its decision by an exercise of reason." *Id.* at 94, 803 P.2d at 1000.

2. *DEFENDANT'S REQUESTED* INSTRUCTION NO. *5*

The defendant has alleged as a counterclaim that the plaintiff has converted to his own use and benefit cattle owned by the defendant, or the proceeds from the sale thereof. The plaintiff [sic] has the burden of proving each of the following propositions:

1. That the plaintiff exercised dominion over defendant's cattle, or the proceeds from the sale thereof, without a right to do so.

2. That the defendant was consequently deprived of the possession of its cattle, or the proceeds from the sale thereof.

3. The nature and extent of the damages to defendant and the amount thereof.

· If from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the defendant; but if you find from your consideration of all the

evidence that any of these propositions has not been proved, then your verdict should be for the plaintiff.

*DEFENDANT'S REQUESTED* INSTRUCTION NO. *6*

If you find that the plaintiff has converted to his own use and benefit the cattle owned by the defendant, or the proceeds from the sale thereof, the element of damages which must be proved by the defendant are [sic] as follows:

1. The market value of the cattle at the time they were taken by the plaintiff, or the proceeds from the sale of said cattle.

3. JURY INSTRUCTION NO. *4*, in relevant part, reads as follows:

In this lawsuit the Defendant Gigray Ranches Inc. has alleged conversion as a counterclaim. In order for the Defendant to recover on its counterclaim, the Defendant has the burden of proving each of the following propositions:

1. That the Plaintiff exercised dominion and control over Defendant's items of property without a right to do so;

2. That the Defendant was consequently deprived of possession of those items of property;

3. The nature and extent of the damages to Defendant and the amount thereof;

fered and the instructions that the court submitted to the jury is the language in Gigray Ranches' instruction informing the jury that it could find a conversion if Brooks wrongfully converted property "or the proceeds from the sale of those items of property." Gigray Ranches contends that the omission of this language caused the jury confusion, particularly because the one item for which the jury found liability, the 1989 calf sale, was not included with the other itemizations on the list of offsets submitted in evidence by Brooks.

Instruction number 4 outlined the elements of conversion, and instruction 19 made it clear that if the jury found that Brooks had converted Gigray Ranches' property, the jury was to "fix the amount of money which will reasonably and fairly compensate" Gigray Ranches. Had the jury not been able to understand that misappropriated proceeds were compensable damages, the jury would not have been able to award the $900 damages for the fair market value of the calves Brooks sold in late 1989. The trial court's instructions were accurate statements of the law and were adequate to guide the jury. The jury's verdict indicates there was no confusion.

## V.

### THE DISTRICT COURT DID NOT ERR IN GRANTING BROOKS' MOTION TO CASH THE CHECKS AND DECREEING THAT GIGRAY RANCHES HAD NO TITLE, INTEREST, OR LIEN IN THE CHECKS

Gigray Ranches re-states its argument that Brooks admitted liability for 60% of the

> If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the Defendant Gigray Ranches Inc. as to its counterclaim. If you find from your consideration of all the evidence that any one of these propositions has not been proved, then your verdict should be for the Plaintiff Mr. Brooks as to the counterclaim of the Defendant.
> The word "dominion" as used in this instruction means ownership or right to property which arises from the power of disposition and the right of claiming it.
> JURY INSTRUCTION NO. *19*
> If you decide for the Defendant Gigray Ranches Inc. on the question of liability with respect to its counterclaim, you must then fix the

1990 calf sale proceeds and therefore maintains that the court's order to cash the checks was erroneous because Brooks had an interest in the checks. This is a subsidiary question of the appeal from the denial of the motion for judgment notwithstanding the verdict. The court acted within its authority in modifying the judgment so as to give effect to the jury's verdict. There is no error in the trial court's order.

## VI.

### THE DISTRICT COURT PROPERLY DENIED GIGRAY RANCHES' REQUEST FOR ATTORNEY FEES

The district court denied Gigray Ranches' request for attorney fees. The trial judge's remarks make it clear that the denial was based upon the conclusion that the Gigray Ranches' defense of the breach of contract action was inseparably intertwined with and at least partially attributable to the intentional tort claim for conversion. The district court concluded that the tort claim was outside the scope of section 12–120(3) of the Idaho Code:

> The Court looked at the attorney fees to see if I could distinguish which ones were used on the intentional tort and which ones were used on the defending of the contract. And I was unable by this affidavit to make those findings, so the Court would not grant attorney fees in this particular case on these Memorandum of Costs. And with regard to conversion it does not fall

amount of money which will reasonably and fairly compensate it for any of the following elements of damage proved by the evidence to have been proximately caused by the Plaintiff Mr. Brooks' conversion:
1. The market value of the items of property at the time they were taken by the Plaintiff;
Whether any of these elements of damage has been proved by the evidence is for you to determine.
JURY INSTRUCTION NO. *19A*
When I use the word "value" or the phrase "fair market value" as to property or services in these instructions, I mean the amount which a willing buyer would pay and [sic] a willing seller for the property or services in question, taking into consideration all the circumstances.

within the contract and it does not fall within the statutory authority of Idaho Code 12–120(3), so there would be no attorney fees at all entitled under the conversion. The Court is unable to determine which attorney fees were used for the conversion and which were used for the contract action. The Court explains the jury's verdict as they did not find a contract existing at that time between Gigray Ranches and Brooks, so Idaho Code 12–120(3) does not apply nor does [sic] the contractual terms, itself.

■ The district court did not award attorney fees on the defense of the contract claim because the memorandum of costs was insufficient to isolate the fees attributable to that defense from the fees attributable to prosecution of the counterclaim for conversion. The record supports the conclusion of the trial court, if the conversion claim is not a valid basis for application of I.C. § 12–120(3).

Idaho Code § 12–120(3) provides as follows:

In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

It is clear that this dispute arose out of a commercial transaction, and it is necessary to analyze the history of this Court's interpretation of I.C. § 12–120(3) to determine if the district court's conclusion that the claim of conversion would not permit an award pursuant to the statute is correct. This is a particularly difficult question, since Gigray Ranches' claim as to the calves could have been pled as a breach of contract, rather than as the tort of conversion.

In *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 792 P.2d 345 (1990), the Court analyzed the application of I.C. § 12–120(3) in a situation in which a farmer made a claim for damages to his land as a consequence of use of an experimental herbicide. The plaintiff made claims against the manufacturer based upon the claim that the manufacturer's representation induced his reliance. However, the product was purchased from a local co-op, not from the manufacturer. Although there was a commercial transaction involved—the purchase of the manufacturer's product—the commercial transaction was too far removed from the theory of recovery to warrant application of I.C. § 12–120(3):

These cases lead to the conclusion that the award of attorney's fees is not warranted every time a commercial transaction is remotely connected with the case. Rather, the test is whether the commercial transaction comprises the gravamen of the lawsuit. Attorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover. To hold otherwise would be to convert the award of attorney's fees from an exceptional remedy justified only by statutory authority to a matter of right in virtually every lawsuit filed.

*Id.* at 784, 792 P.2d at 349.

■ *Brower* establishes that there are two stages to the analysis. First, there must be a commercial transaction that is integral to the claim. Second, the commercial transaction must be the basis upon which recovery is sought. In *Brower* there was a commercial element to the claim. However, the theory of the case upon which recovery was sought was misrepresentation, a tort.

In *Fuller v. Wolters*, 119 Idaho 415, 807 P.2d 633 (1991), the Court held that a counterclaim for legal malpractice sounds in tort, and "even though the underlying transaction which resulted in the malpractice was a 'commercial transaction,' attorney fees under 12–120(3) are not authorized." *Id.* at 425, 807 P.2d at 643. The Court distinguished its

prior decision in *Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989), in which neither party asserted that a malpractice action was basically a tort rather than a "commercial transaction." *In Fuller v. Wolters,* the Court refined the application of *Brower:*

> We agree with the trial court's statement that under our present statute, "tort actions are essentially actions in which the parties bear their own attorney's fees, regardless of [who] prevail[ed]."

*Id.* at 425, 807 P.2d at 643.

 Underlying the claim in *Fuller v. Wolters* was a commercial transaction—a contract for services between an attorney and a client. However, legal malpractice is a tort claim, and a claim based upon tort does not support an award of fees pursuant to I.C. § 12–120(3).

*Farmers Nat'l Bank v. Shirey,* 126 Idaho 63, 878 P.2d 762 (1994), addressed the question of whether I.C. § 12–120(3) was applicable when there were both tort and contract claims. The bank sought a declaratory judgment establishing that it had an interest in proceeds from the sale of collateral securing a farm equipment loan superior to the secured interest claimed by the sellers of equipment. The sellers counterclaimed, alleging a superior interest in the collateral, breach of a fiduciary duty, fraud, breach of contract, tortious interference with business relationships, and conversion. This Court affirmed the grant of summary judgment in favor of the bank on its claim and in favor of the bank on the sellers counterclaims. The counterclaim contained multiple tort claims and a breach of contract claim. The district court determined that I.C. § 12–120(3) was applicable and awarded attorney fees. This Court commented as follows:

> The district court properly awarded attorney fees pursuant to I.C. § 12–120(3) provision which provides for the recovery of attorney fees incurred in litigation based upon any contract. Where a party alleges the existence of a contractual relationship of a type embraced by section 12–120(3), as the Shireys have done, that claim triggers the application of the statute and a prevailing party may recover fees even though no liability under a contract was established. *Id.* at 73, 878 P.2d at 772.

The allegation of a contract of the type covered in I.C. § 12–120(3) was sufficient to award fees, even though the claim was combined with other theories that would not have triggered application of the statute. That is analogous to this case in which Gigray Ranches prevailed on the contract claim brought against it. However, the denial of fees here resulted from the fact that the fees attributable to the contract claim could not be separated from the conversion claim, which the district court found outside the scope of I.C. § 12–120(3). The fact that the conversion claim arose out of a commercial transaction is not sufficient to apply I.C. § 12–120(3): "the commercial transaction must be integral to the claim and constitute the basis upon which the party is attempting to recover." *Ervin Constr. Co. v. Van Orden,* 125 Idaho 695, 704, 874 P.2d 506, 515 (1993). The basis of the Gigray Ranches' claim was the tort of conversion. The district court properly denied Gigray Ranches' claim for attorney fees.

## VII.

### THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DETERMINING GIGRAY RANCHES WAS THE PREVAILING PARTY FOR PURPOSES OF AWARDING COSTS

 The district court concluded that Gigray Ranches was "the prevailing party on the contract action" and "prevailed on one aspect of their conversion." This Court has referred to the multi-factor inquiry of the rule pertaining to costs, I.R.C.P. 54(d)(1)(B), in reviewing a lower court's ruling that a party was not a "prevailing party" for purposes of attorney fees under I.C. § 12–120. *See International Eng'g Co. v. Daum Indus.,* 102 Idaho 363, 364–65, 630 P.2d 155, 156–57 (1981); *see also Shirey,* 126 Idaho at 73, 878 P.2d at 772 (attorney fees properly awarded under I.C. § 12–120(3) where district court determined "prevailing party" under 54(d)(1)(B)). The district court acted within its discretion in concluding that Gigray

Ranches was a prevailing party for purposes of awarding costs.

## VIII.

### FEES ON APPEAL

■ Multiple issues have been raised on appeal. Brooks has prevailed on all issues except for the determination that Gigray Ranches was entitled to costs in the district court. The determination as to costs in the district court was a minor issue in this appeal. Brooks is the prevailing party on appeal and is entitled to costs, not including attorney fees.

## IX.

### CONCLUSION

The district court's rulings denying Gigray Ranches' motion for judgment notwithstanding the verdict, denying Gigray Ranches' motion for a new trial, denying Gigray Ranches' objections to the court's jury instructions, and amending the judgment to permit Brooks to cash the checks for the disputed proceeds are affirmed. The district court's award of costs to Gigray Ranches but denying attorney fees is affirmed. Brooks is awarded costs on appeal, not including attorney fees.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.